MacCONAGHY & BARNIER, PLC
JOHN H. MacCONAGHY, SBN 83684
JEAN BARNIER, SBN 231683
645 First St. West, Suite D
Sonoma, California 95476
Telephone: (707) 935-3205
Email: jbarnier@macbarlaw.com

Attorneys for Plaintiff,
JANINA M. HOSKINS

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>CARL ALEXANDER WESCOTT AND MONETTE ROSEMARIE STEPHENS,<br><br>Debtors. | Case No. 12-30143 DM<br><br>(Chapter 7)<br><br>A.P. No.<br><br>**COMPLAINT OBJECTING TO DISCHARGE** |
| JANINA M. HOSKINS, TRUSTEE IN BANKRUPTCY OF THE ESTATE OF CARL ALEXANDER WESCOTT and MONETTE ROSEMARIE STEPHENS,<br><br>Plaintiff,<br><br>v.<br><br>CARL ALEXANDER WESCOTT and MONETTE ROSEMARIE STEPHENS,<br><br>Defendants. | |

/

/

Plaintiff Janina M. Elder, Trustee in Bankruptcy of the Estate of Carl Alexander Wescott and Monette Rosemarie Stephens alleges:

## JURISDICTION AND VENUE

1. On January 17, 2012, Debtors Carl Alexander Wescott and Monette Rosemarie Stephens filed their joint Voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code in the above-entitled Court. Thereafter, Janina M. Hoskins was duly appointed as Chapter 7 Trustee in Bankruptcy therein.

2. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157, 1334 and 11 U.S.C. § 727. This matter is a "core proceeding" as defined by 28 U.S.C. § 157(b)(2)(J). Alternatively, Plaintiff consents to final judgment of the Bankruptcy Court pursuant to the provision of 28 U.S.C. § 157(c)(2). Venue is proper here pursuant to the provisions of 28 U.S.C. § 1409.

## GENERAL ALLEGATIONS

3. Commencing no later than 2005, the Debtors engaged in the business of promoting and syndicating various speculative, high-risk, and fraudulent real estate investment schemes. These included extensive highly leveraged land holdings in areas of the North Coast region of California ⁻and flawed land development schemes in Uruguay, Honduras, and Ecuador.

4. Virtually all of these investment schemes collapsed, leaving unpaid creditors holding claims against the Debtors in excess of $27 million according to the filed proofs of claim.

5. Plaintiff alleges that the Debtors used a substantial portion of the investor proceeds they raised to make personal investments and maintain a lavish personal lifestyle, including purchases of premium sports tickets, luxury travel, expensive jewelry, and artwork, all of which has allegedly disappeared.

/

6. The Debtors' credit card charges averaged at least $10,000 per month. Debtors testified that they had received approximately $1million in 2010 and 2011. According to their Amended Schedule J their monthly expenses were $7,600.00 a month for 2010 and 2011 which totals $182,400.00 for 2010 and 2011. The Debtors were unable to explain where the remaining $700,00.00 was spent in 2010 and 2011. In addition, the Debtors testified that they borrowed $500,000.00 in May of 2011 and could not explain where the funds had gone.

7. Plaintiff alleges that the Debtors withdrew $299,949.00 between April 13, 2011 and April 22, 2011 from Pook Snook Dook LP, a fraudulent "asset protection" entity they previously established. No accounting for these funds has been provided.

8. Plaintiff alleges that Wescott testified he was paid $800,000.00 in 2010 by Jeremy Smith for a second deed of trust on 7950 Hearst Road, Willits, CA. Plaintiff alleges that there were no deposits of $800,000.00 into any of Wescott/Stephens accounts from a loan payoff.

9. Plaintiff alleges that no later than the year 2008, it became apparent to the Debtors that the likely value of their assets was greatly exceeded by the expected amount of their liabilities, and that they would be subject to numerous legitimate 7 and 8 figure claims from defrauded investors and other bona fide creditors.

10. Plaintiff alleges that Wescott and Stephens executed a transmutation agreement in June of 2010 whereby Wescott received all the properties in Latin America which are valued at several million dollars and Stephens received all the properties in California which were worthless.

11. Plaintiff alleges that the Debtors routinely transferred monies between their personal accounts and numerous corporations, LLCs and S.A.s for no consideration. Plaintiff further alleges that the Debtors wired monies out of their personal accounts and corporations, LLCs and S.A.s to Latin America.

/

/

## CLAIM OF RELIEF
(Objection to Discharge – 11 U.S.C. Section 727(a)(2)(A))

12. Plaintiff realleges and incorporate the allegations contained in Paragraphs 1 through 11, inclusive.

13. On or about April 11, 2011, a date within one year before the petition date, the Debtors voluntarily transferred various valuable assets from an established trust to Ivy League Charter, LLC, a Nevada corporation which they established in April of 2011. The Debtors were the trustees of the Pook Snook Dook Trust Limited Partnership, allegedly a trust for the benefit of their three children in June of 2010. The Debtors acted to conceal their beneficial interest by amending the certificate of limited partnership of Pook Snook Dook LP to name a shell Nevada limited liability company, Ivy League Charter, LLC as the new general partner and the Pook Snook Dook Trust as the 97% limited partner. On April 13 through April 22, 2011, the Debtor withdrew $299,949.00 from Ivy League Charter LLC. The Debtors cannot account for the monies.

14. On April 18, 2011, the Debtors wired $8,500.00 to Ogier, Inc., an offshore law firm that provides fraudulent "asset protection", legal and fiduciary services in the Cayman Islands, according to its website. The Debtors had already sent Ogier $7,500.00 on January 14, 2011. The Debtors did not list these payments to Ogier on their Statement of Financial Affairs.

15. On January 26, February 17, February 22 and February 24 of 2011, the Debtors wired a total of $230,200.00 to International Aircraft Title & Escrow in Oklahoma City, Oklahoma. International Aircraft Title & Escrow offers aviation title services, domestically and internationally, according to its website. The Debtors did not list any aircraft on their Schedules.

16. The Debtors made these transfers with the actual intent to hinder, delay or defraud creditors.

WHEREFORE, Plaintiff prays for judgment as set forth below.

/

## SECOND CLAIM FOR RELIEF
(Objection to Discharge – 11 U.S.C. Section 727(a)(2)(B))

17. Plaintiff realleges and incorporate the allegations contained in Paragraphs through 16, inclusive.

18. At their meeting of creditors, The Debtors testified under oath, that neither of them are employed and neither have been employed for several years. The Debtors further testified under oath that they had no source of income in 2012. This testimony is false.

19. Atlas Consulting, Inc. is a corporation wholly owned by Stephens. Its only asset is a single family home in Santa Barbara, California whose first and second mortgages outweigh the value of home. Stephens owned the home as her separate property before marriage to Wescott and transferred title of the Santa Barbara home to Atlas Consulting in June of 2010.

20. On March 1, 2012 and March 2, 2012, Wescott transferred $5,570.00 from his personal Wells Fargo account to Atlas Consulting, Inc. Between April 17, 2012 and June 2012, the Debtors deposited $54,307.00 into the Atlas Consulting checking account. The Debtors spent $58,420.00 from this account.

21. On March 27, 2012, an Order granting the Motion for Relief from Stay was granted as to HSBC Bank USA as holder of the first on 853 Ashbury St., San Francisco, CA, the home of the Debtors.

22. On June 1, 2012, the Debtors, without court authority, executed and recorded a Grand Deed for 853 Ashbury St., San Francisco, CA purportedly transferring their interest in their home. The Debtors claimed the new buyers were Alma Rojas and the Ellador Ramirez Revocable Trust and the Carls Wescott Revocable Trust which named Wescott and Stephens as Trustees. The Debtors paid Team Fecteau, Inc. a California corporation, whose motto on its website is "We Short the Bank, Not the Homeowner" to facilitate the transaction.

23. Despite having no earnings or income, Atlas Consulting recorded $44,200.00 in deposits between January 18, 2012 and May 31, 2102.

24. On March 27, April 17 and April 18 of 2012, the Debtors caused Atlas Consulting to wire out a total of $12,657.00 to bank accounts at Banco Pichincha, Banco Internacional, and Banco De Guayaquil. All of these banks are located in Ecuador.

25. On May 24, 2012, the Debtors caused Atlas Consulting to pay $1,750.00 for tickets for a Broadway show at the Curran Theater in San Francisco.

26. The Debtors made these post-petition transfers with the actual intent to hinder, delay or defraud creditors and officers of the estate.

WHEREFORE, Plaintiff prays for judgment as set forth below.

### THIRD CLAIM FOR RELIEF
(Objection to Discharge – 11 U.S.C. Section 727(a)(3))

27. Plaintiff realleges and incorporate the allegations contained in Paragraphs 1 through 26, inclusive.

28. The Debtors have failed to produce documents regarding their numerous business holdings despite repeated demands by the Trustee and Court orders to do so. Specifically, the Debtors have failed to produce financials records for their various corporations, LLCs and S.A.s. On September 6, 2012, the Trustee's counsel, pursuant to a Court order, reviewed records at the Debtors' home. There were no records for any entities for 2011. However, there were records for some of the Debtors' business entities for 2008 and 2009. There were large gaps of files missing and Wescott's portion of the Debtors' home office was in disarray.

29. The Debtors testified that there were 150 boxes of documents in various locations including Ecuador. Despite traveling to Ecuador on numerous occasions, Wescott has not produced any documents from Ecuador despite a Court order.

30. On July 13, 2012, this Court issued an Order for 2004 Examination of the Debtors' records. The Trustee requested the Order after the Debtors filed Amended Schedules on July 10, 2012 and this was the second 2004 Order for Examination of the Debtors. On

August 8, 2012, Wescott filed a Motion to Quash. The Motion was denied and the Debtors were ordered to turnover documents pursuant to the July 13, 2012 Court order and the Order Compelling Turnover of Documents issued on June 17, 2012.

31. The Debtors' counsel, Ms. Gropper Nelson, informed the Trustee's counsel and this Court that she had three boxes of documents in her office pertaining to the 2004 Orders.

32. After August 26, 2012 when the Court entered its Order denying Wescott's Motion to Quash, Ms. Gropper Nelson allegedly turned over the boxes of documents in her office to a service at the request of the Debtors. The Debtors never turned over the documents.

33. The Debtors concealed or failed to preserve any recorded information which the Debtors' financial condition or business transactions might be ascertained for 2010 and 2011.

WHEREFORE, Plaintiff prays for judgment as set forth below.

### FOURTH CLAIM FOR RELIEF
(Objection to Discharge – 11 U.S.C. Section 727(a)(4)(A))

34. Plaintiff realleges and incorporate the allegations contained in Paragraphs 1 through 33, inclusive.

35. On March 21, 2012, the Debtors were asked about a diamond ring owned by Stephens at the 341 hearing. Wescott testified under oath that he had paid $100,000.00 for the ring. Stephens falsely testified that she had lost the ring while swimming. She also falsely testified that they had recently changed insurance companies and did not realize that her $100,000.00 diamond was not insured.

36. Wescott falsely testified that he had no bank accounts outside the United States. However, there are numerous wires to banks in Ecuador, Honduras and Panama including wires to foreign bank accounts post-petition.

37. The Debtors could not account for the $1 million they received in 2011 and could only account for the expenses listed on Schedule I. However, the Debtors had routinely wired

monies out of the country during 2011 according to bank records the Trustee subpoenaed.

38. The Debtors Schedules and Statement of Affairs are false and inaccurate. After amending their schedules for the third time, the Debtors failed to list all of the corporations, LLCs and S.A.s they control. The Debtors listed real property as property of the estate that belongs to one of their LLCs. The Debtors claimed payments on a vehicle that is owned by a LLC. The Debtors failed to list the payments to Ogier, Inc. a law firm on their Statement of Financial Affairs. The Debtors failed to list bank accounts that they controlled as the managing member of various corporations, LLCs and S.A.s.

39. The Debtors made knowingly false oaths and false accounts.

WHEREFORE, Plaintiff prays for judgment as set forth below.

### FIFTH CLAIM FOR RELIEF
(Objection to Discharge – 11 U.S.C. Section 727(a)(4)(D))

40. Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 39.

41. After this Court denied Wescott's Motion to Quash, Ms. Gropper Nelson turned over three boxes of documents in her possession, pursuant to a 2004 Examination Order, to a service, allegedly, per a request made by the Debtors.

42. Despite the Court order denying the Motion to Quash, the Debtors have failed to turnover the boxes of documents in their possession pursuant to the 2004 Examination Orders issued on June 17, 2012 and July 13, 2012.

43. The Debtors intentionally withheld from the Trustee documents relating to the Debtors' property or financial affairs.

WHEREFORE, Plaintiff prays for judgment as set forth below.

/

/

## SIXTH CLAIM FOR RELIEF
(Objection to Discharge – 11 U.S.C. Section 727(a)(5))

44. Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 43, inclusive.

45. Despite testifying at three continued First Meeting of Creditors, the Debtors are unable to account for $700,000.00 of the $1 million they received in 2010 and 2011.

46. The Debtors cannot account for $800,000.00 that was paid to them on a second deed of trust and there are no deposits into any of their accounts for a payment of $800,000.00, the amount Wescott testified he received from the payoff of a second deed of trust.

47. The debtors have failed to explain satisfactorily the loss of assets to meet their liabilities.

WHEREFORE, Plaintiff prays for judgment as set forth below.

## SEVENTH CLAIM FOR RELIEF
(Objection to Discharge – 11 U.S.C. Section 727(a)(6)(A))

48. Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 47, inclusive.

49. On June 17, 2012, this Court issued an Order Compelling Turnover of Documents. Despite having documents in their possession, the Debtors have refused to turnover documents pertaining to the various corporations, LLCs and S.A.s they control. While the Debtors turned over some documents for 2008 and 2009, the Debtors have failed to provide documents pursuant to the Order Compelling Turnover.

50. The Debtors refused to obey the lawful orders of this Court.

/
/
/
/

WHEREFORE, Plaintiff prays for judgment against the Defendants as follows:

1. For an order denying the Debtors' general discharge under Bankruptcy Code Section 727;

2. For costs of suit; and

3. For such other and further relief as the Court deems proper.

Dated: October 15, 2012            MacConaghy & Barnier, PLC

                                             /s/ Jean Barnier
                                             By: Jean Barnier
                                             Attorneys for Plaintiff