Sheila Gropper Nelson, SBN 85031
Law Offices of Sheila Gropper Nelson
55 Francisco St., 6th Fl
San Francisco, CA 94133
Telephone: (415) 362-2221
Facsimile: (415) 576-1422
Email: shedoesbklaw@aol.com

United States Bankruptcy Court

Northern District of California

(San Francisco Division)

| | |
|---|---|
| In re<br>Carl Alexander Wescott &<br>Monette Rosemarie Stephens<br>Debtors.<br>_____/ | Case Number   12-30143<br>APN              12-03148 |
| Janina M. Hoskins, Trustee in<br>Bankruptcy of the Estate of<br>Carl Alexander Wescott &<br>Monette Rosemary Stephens<br>Plaintiff<br>v.<br>Carl Alexander Wescott &<br>Monette Rosemarie Stephens<br>Defendants.<br>_____/ | Points and Authorities in<br>Opposition to Motion for Summary<br>Judgment<br>Date:      April 26, 2013<br>Time:      10:00 a.m.<br>Place:     22nd Floor<br>              Judge Montali |

### POINTS & AUTHORITIES IN OPPOSITION TO
### TRUSTEES MOTION FOR SUMMARY ADJUDICATION

Monette Rosemarie Stephens, (hereafter "Stephens"), debtor/defendant, through her attorney, Law Office of Sheila Gropper Nelson, respectfully opposes Janina Hoskins, Appointed Trustee's (hereafter "Hoskins") Motion for Summary Judgment (hereafter "MSJ") to deny her personal discharge. The opposition is based upon the existence of material issues of fact and that, as stated by the Trustee and her response to discovery, discovery continues and is on going. Applying U.S. Supreme Court bankruptcy decisions those statutes are not intended to be read mechanically. Nor should they be applied

as if a computer without also assuring an overriding consideration for the equitable principles that govern the exercise of bankruptcy jurisdiction. Those principles, together with the Code and case law, do not support a denial of Stephens' discharge (See *Sachs v. Adeli* 2008 Bankr. LEXIS 907 (ED CA 2008))

FACTUAL AND PROCEDURAL SUMMARIES:

The underlying proceeding was filed as a joint petition on January 17, 2012. Prior to that Carl Alexander Wescott had filed an individual filing in December, 2011. Ms. Stephens did not initiate either filing. She signed the petition at her husband's directions. She believes he thought the filing would provide them with additional time against pending foreclosures. She did not actively speak with an attorney at that time. Ms. Stephens testified that she had minimal contact with the initial attorney and signed the schedules at home with her husband. (Stephens declaration; 341-3/21/12 pg 12 ln 13 & 17) The schedules were produced substantially by Mr. Wescott. (341-5/9/12 pg 151 Ln 25)

She informed the Trustee, from the first meeting of creditors on March 21, 2012 through to her deposition of March 15, 2013 that once married to Mr. Wescott she relied entirely upon his handling of the family finances paying attention only to the payment of family expenses. Her reliance was reasonable under all of the circumstances through to the present time. She remains financially dependent upon Mr. Wescott, has three young children aged seven years and younger, one of whom has diagnosed hearing loss and learning requirements that require additional time and energies. She has not held full time work for at least two to three years. During the relevant period of time, the past 2 to 3 years prior to the filing, she was pregnant with the family's third child, gave birth and was dealing with family health issues of her elderly parents. (Stephens' declaration; 341-3/21/12 pg 113 ln 4; 341-5/9/12 pg 93 ln 23, pg 103 ln 25, pg 104 ln 6; 3/15/13 Depo pg 126 ln 21-24, pg 127 ln 6-18)

That the case did not start off well is an understatement. Following the order of this Court allowing the undersigned to withdraw as counsel for Mr. Wescott Ms. Stephens has continued to act to fulfill her obligation to co-operate with the Trustee. She has provided written response to the April, 2004 Order of Examination in addition to the response and production provided by her prior counsel Mr. Williams (Williams declaration), she produced a written declaration, under penalty of perjury, for the April 2012 examination order, she produced additional documents to the extent they were under her

control and in her possession responsive to both orders, and she attended her scheduled deposition. She has done everything possible of doing to the extent that it was in her possession and control to respond and co-operate. She has and continues to fulfill her obligations as a debtor. (Williams Declaration ; Nelson declaration, Stephens Declaration)

The business transactions conducted by Mr. Wescott have been identified by him, the Trustee, and her professionals, as complex and difficult. ( See Trustee's Expert Witness Crom Declaration)  Ms. Stephens has never been involved in or undertaken any active role in any of those activities even when her name appeared on the papers, titles and documents associated with those businesses.  She has never visited the businesses and properties outside of the U.S. and had limited knowledge or contact with those in the U.S.(Stephens' declaration; 3/15/13  Depo. Pg 159 ln 24-28 & pg 161  ln 31)

The schedules, amended on or about July 5, 2012, were amended through counsel but were done under extreme conditions with an extremely short time line. Though they were signed in the presence of counsel they were also dependent upon information provided by Mr. Wescott. (Nelson declaration) Though the previously used schedule format, from January to June 2012 did not conform entirely with standard forms and could be confusing, they contained substantial information concerning Wescott's businesses, claims, assets and lawsuits.  Everyone from Mr. Wescott to Mr. Crom all agree that they were complex. Wescott testified during the 341 meetings that virtually all of the information on those schedules came from him. ( Wescott 5/9/12 341 pg .151 ln 25) This was true at the start of July, 2012. Since he conducted the businesses he was the person with the information. Ms. Stephens had limited information, appeared to be substantially dependent on his information, and did not have the ability to provide independent information except as for Newforth and some of Atlas. (Nelson declaration) She could and can not independently provide information for the Trustee. (Stephens' 3/15/13 Depo. pg 89 ln 26)

A little over a month, after retention, the attorney client relationship between Mr. Wescott and myself deteriorated to the extent that I could not ethically fulfill my obligations to the client and the Court.  I brought and the Court granted my motion to be relieved as counsel. (Nelson declaration) As directed by the Court I advised Mr. Wescott of his continuing obligation to co-operate with the Trustee,

the outcome of the motion to quash and that there was an obligation for production in Sept. 2012. After entry of that order I had no ability to control Mr. Wescott's conduct. He took documents that he asserted possession and control over. (Nelson declaration)

On September 6, 2012, in compliance with all of the Court's orders, Ms Stephens and I produced all of the documents in Ms. Stephen's possession and control responsive to both the April and July 2012 orders of examination. We advised that they were **all of the documents in Ms. Stephens possession and control** responsive to the orders. (Emphasis supplied) We never stated that they were all of the documents as alleged by Ms. Barnier. (Nelson declaration) On or about November 15, 2012 a written declaration under penalty of perjury signed by Ms. Stephens was provided to the trustee's counsel.

Trustee filed her complaint on October 15, 2012. Like this summary judgment motion it confuses syntax, gender, tense as well trying to overlook the fact that a joint petition still creates two distinct estates with two distinct debtors who must be treated as individuals with separate obligations to the Court and Trustee. Though filed as a joint petition case law uniformly holds that "[u]ntil consolidated by the court, the two estates remain separate." even where husband and wife have filed a joint petition. 11 USC §302(b); In re Estrada, 224 B.R. 132 (Bankr. S.D. Cal. 1998); In re Reider, 31 F.3d 1102, 1111 (11th Cir. 1994). In re Chan, 113 B.R. 427 (N.D. Ill. 1990).

Ms. Stephens has done everything within her control and *possession* to comply with her obligations to both. Her discharge should not be denied under any of the statutes as argued by the moving papers. ( 11 USC 727(a)(3), (a)(5) and (a) (6)).

SUMMARY OF ARGUMENT:

A joint petition does not create one estate. The conduct of one spouse is not automatically applicable to the other. (11 U.S.C. §302(b))

ARGUMENT:

STANDARD OF REVIEW:

The Trustee Has Not Met Her Burden of Proof:

The party moving for summary judgment bears the burden of proof to demonstrate that there are no material issues of fact for determination by a trier of fact. Only when that burden has been met does

the burden shift to the respondent. As stated in *Simpkins v. US* 253 F. Sup 2nd 4 (2003) summary judgment can only be entertained where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Fed. R. Civ. P. 56[c]). Ms. Stephens' testimony, together with her limited or non existent control relating to the businesses and practices by Mr. Wescott, establishes that there are material and genuine issues of fact that require determination by the trier of fact and do not allow for summary adjudication.

These include whether she has or had possession or control sufficient to deny her discharge, whether she obeyed the Court's directives, and whether she has provided a plausible explanation for the loss of an asset. Each is a factual dispute which require that a trier of fact make a determination. As such where as in this matter there is a "...claimed factual dispute... shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.", (*First Nat'l Bank,* 391 U.S. 253, 290; *Giles v. General Motors Acceptance Corp.*, 494 F.3d 865, 872 (9th Cir. 2007); *Torres v. City of Madera* 655 F Supp 2d 1109, 1115 (E.D. Cal. 2009)) , summary judgment cannot be entered. This does not change despite the purpose of summary judgment which is to pierce the pleadings to assess proof . Factual disputes have been identified which are genuine and material and preclude summary adjudication as against Ms. Stephens. In such cases the Court must draw inferences "... from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* 475 U.S. 574, 587 (1986) Neither *In re de Laurentis Entertainment Group, Inc., 963,F.2d 1269,1271-13 72 (9th Cir. 1992)* or *Matter of Continental Airlines*, 98 F2d 1450, 1458 (5th Cir. 1993 contradict that holding or support entry of summary judgment as to Ms. Stephens. Contrary to the Trustee's citation *Anderson v. Liberty Lobby* 477 U.S. 242 also supports the position that summary judgment can not be entered by this Court as to Ms. Stephens. As stated in *Anderson v. Liberty Lobby* 477 U.S. 242, 255 where there are issues of fact that could be resolved in favor of either party summary adjudication is not available. Determination of each element, in this instance overall circumstance, ability to comply, compliance and intent all require determination as factual issues since each is capable of being resolved in favor of either the moving or opposing party. That potential resolution, in favor of either,

Case: 12-03148    Doc# 31    Filed: 04/12/13    Entered: 04/12/13 19:11:09    Page 5 of 10

prohibits summary adjudication. Therefore the Trustee cannot and has not met the burden of proof to allow for summary adjudication as to Ms. Stephens. (Fed. R. Bankr. P. 4005; *Khalil v. Developers Sur. & Indem. Co.* 379 B.R. 163, 172 (9th Or. BAP 2007), aff'd, 578 F.3d 1167, 1168 (9th Cir. 2009))

## Ms. Stephens Has Kept & Produced Records under Her Control:

Ms. Stephens has kept and produced those records under her control. Denial of discharge pursuant to 11 U.S.C. §727(a)(3) requires a showing that *under the circumstances* (emphasis supplied) the debtor failed to maintain and preserve adequate records, and that the failure makes it impossible to ascertain the debtor's financial condition and material business transactions. (*Lansdowne v. Cox* 41 F.3d 1294, 1296 (9th Cir 1994). That analysis requires a factual determination of circumstances before reaching whether the alleged conduct amounts to a "failure to maintain and preserve records" and is by its very nature factual. The Trustee's own pleadings and papers, in addition to testimony by both Ms. Stephens and even Mr. Wescott, demonstrate that substantially all of the issues relate to and are controlled by Carl Wescott. He has testified that he conducted business outside of the U.S. to which she never traveled. He bought, sold and transferred properties in the U.S. without her involvement. (Wescott 341-5/9/12 pg 151 ln25) She is and was financially dependent upon him with young children. Each are factual questions for determination as a legitimate basis for her deferral to his pronouncements. (Stephens' declaration; 341-5/9/12 pg 83 ln 14 & 3/15/13 Depo. Pg 41 ln 31, pg 90 ln2, pg 189 ln 24, 28) She has produced everything in her possession and control. (Stephens' declaration; 341-5/9/12 pg 13 ln 2; Williams Declaration) If there are inadequacies in her documents she has undertaken to explain those inadequacies. Determination as to whether those explanations are adequate are factual matters that also do not allow for summary adjudication. *Caneva v. Sun Cmtys. Operating Ltd. P'ship*, 550 F.3d 755, 761 (9th Cir. 2008). She has done everything she is capable of doing and has done nothing to make it impossible for the Trustee to determine the value or existence of the assets which she has either possession and/or control over no matter how limited they may be. She has been forthcoming from the first 341 meeting to the present. (Stephens declaration)

The debts and the relevant material are substantially all Mr. Wescott's. *(McBee v. Sliman,* 512 F.2d 504, 506 (5th Cir. 1975); *Caneva* Id. 550 F.3d at 764. *United States Trs. v. Hong Minh Tran* 464

Case: 12-03148   Doc# 31   Filed: 04/12/13   Entered: 04/12/13 19:11:09   Page 6 of 10

B.R. 885).  Independent of whether there is a requirement to find "actual intent" genuine issues of material fact have been identified which would render summary adjudication inequitable as to Ms. Stephens.

### Spouses Are not Automatically Held Responsible for the Others Conduct:

Spouses, like Ms. Stephen, are not automatically held responsible for the "bad conduct" of their co-filing spouse.  Consistent with the code's identification of 2 estates each spouse is an individual with independent obligations. Each spouse is to be judged as an individual. This is especially true when determining whether to deny discharge.

In both *Manning v. Watkins* 474 B.R. 625 (ND IN 2012), and consistent with *Lansdowne* Id. at 1296, Courts have been capable of identifying when the bad conduct of one spouse should not taint the discharge of the other.  In *Manning* Id. virtually all of the issues identified by that Trustee were matters dealing with the husband.  Though the wife was involved in the husband's business, like Ms. Stephens, she was taking care of the home and children.  Though that Court identified the wife as uneducated similar decisions have been reached even with more educated spouses and a reversal of gender.  Indeed Time Magazine quotes Sheryl Sandberg, head of Facebook and worth over $90 million as demurring when asked about her worth by saying of her husband " He manages our money.... I essentially have no interest" (Time Magazine March 18, 2013 pg.42 Sheryl Sandberg)  (Nelson declaration) As in *Manning* Ms. Stephens was involved in the household and child rearing since the start of the marriage. Like *Manning* she was not involved in property or business acquisition or finance beyond following the directions of the responsible spouse, here Mr. Wescott.  Objectionable conduct, if any, like   sending checks or wire transfers did not originate with Ms. Stephens.  Like *Manning* she did what she was asked to do. As the Manning court stated: "Not to be pejorative in any manner – Debra's role in the couple's relationship and in financial matters which brought money into that relationship was as an essential and life-fulfilling "stay at home mom"." As further identified in Manning that relationship requires that "it to be necessary to determine the conduct of debtors in cases such as this one in light of common sense standards that apply to the national community and culture at large. In far too many cases to begin to mention, when the sole source of income derives from one spouse's business activities – whether

independent or as an employee – and the other spouse's participation in the relationship involves managing a household and/or children, it is a relatively rare case in which the latter spouse has much knowledge at all of the former spouse's business affairs. In fact, in a number of households... – one spouse (usually the husband) manages all of the couple's household financial affairs, and the other spouse has very little background or knowledge about those affairs." Whether the Trustee believes this unlikely that issue is a genuine and material issue of fact that disallows summary adjudication. Just as it was "... not even suspicious...that's just the way it is in many relationships..." Ms. Stephens has demonstrated that it was the way it is and was in her marriage. *Manning v. Watkins* 474 B.R. 625 is entirely consistent with the *Lansdowne* holding. *Lansdowne* Id.

Ms. Stephens Has Identified Her Loss of an Asset:

Pursuant to 11 U.S.C. §727(a)(5), a debtor's discharge will be denied if "the debtor has failed to explain satisfactorily, before determination of denial of discharge . . . , any loss of assets or deficiency of assets to meet the debtor's liabilities." In order to prevail the objecting party must show that the debtor not only did the debtor own the identified assets but that those lost assets would be available for the unsecured creditors. (See *GMAC Inc. v. Coley*, 433 B.R. 476, 489 (Bankr. E.D. Pa. 2010).

Except for Ms. Stephens' engagement ring all of the alleged lost assets were controlled by Mr. Wescott. He testified that the assets had either been damaged by a flooding water heater or had been sold by him. Ms. Stephens' testimony relating to the engagement ring has been consistent throughout, it was lost while the family was in Mexico and she was swimming.(Stephens' declaration; 341-3/21/12 pg 147 ln 9 , 3/15/13 Depo. pg 137 ln 16, pg 174, ln 20, pg 196 ln 35, pg 208 ln 29 ) Only one of those delineated assets was in the possession and control of Ms. Stephens. Determining whether her statement is satisfactory is dependent upon determining the underlying circumstance and intent and each is a factual question that cannot be determined on summary judgment. *(GMAC v. Coley*, Id at 489) Even the determination of whether the explanation is worthy of belief is dependent upon a factual determination. ( Haupt v. Belonzi, 476 B.R. 899 (Bankr. W.D Pa. 2012). Ms. Stephens has explained more than once that she lost her engagement ring while swimming. In an effort to determine more she has tried informally to determine what a reasonable value for the ring would have been. She has been advised that resale of

Case: 12-03148    Doc# 31    Filed: 04/12/13    Entered: 04/12/13 19:11:09    Page 8 of 10

wedding sets are often less than the value families believe, and that the probable value for her engagement ring would be about $40,000 or perhaps even less. She had no personal knowledge of the ring's value when the petition was filed. She had not thought about it as it was the least of her concerns during the past two years. (Stephens declaration) Ms. Stephens testimony in relation to this ring has remained consistent. (Stephens' declaration; 341-3/12/12 pg 147 Ln 9; 3/15/13 Depo pg 174, ln 20 & pg196 ln 35) Whether other assets exist, as alleged, is beyond both her knowledge and control, including the existence of an alleged plane. (Stephens' declaration; & 3/15/13 Depo pg 137 ln 16 & pg 208 ln 29 & Trustee's 2004 Examination directed to Stephen Cohen Doc. Number 279 )

Ms. Stephens Has Complied with All Court Orders:

Ms. Stephens has produced everything in her possession and control.

Though discharge is a privilege and not a right substantially all of the case law discussing denial indicate that denial should not be the default position but rather that the guidelines for liberal construction to allow for discharge should control. The cases frequently identify that both a determination whether and a finding to distinguish between a "refusal" to obey and a "failure" to obey are each elements that must be found before discharge can be summarily denied. Indeed courts have held that even where there is a failure to obey that is, without more, insufficient to deny or revoke a debtor's bankruptcy discharge.

Ms. Stephens has done neither. She has produced all the documents and material in her possession and control. She is limited in her ability to control the conduct of another even one who is her husband. She is justifiably afraid of angering him both as the result of economic dependency and physical conduct. (Stephens' declaration; 3/15/13 Depo pg 41, ln 31; pg 42 ln 36; & pg 189 ln 24 & 28, CA Family Code §6203) This is also consistent with the holding in *Smith v. Jordan* 521 F. 3d 430 (2008), cited by the Trustee where the Court of Appeal reversed and stated favorably that a trustee seeking to deny or revoke a discharge must establish both willful intentional conduct. Thus, the trustee must show more than a mere failure to obey the court's order that results from inadvertence, mistake, or inability to comply; she must demonstrate some degree of volition or willfulness on the part of the debtor.

Further where, as here, issues of spousal coercion or abuse are raised, there are genuine issues regarding whether there is an actual ability to perform. That also impacts the determination of willfulness

and intentionality requiring a heightened analysis. California law recognizes that conduct, capable of being restrained by a Court, is sufficient for a determination of domestic abuse. (California Family Code §6203 and related matter ) (Nelson declaration) Inherent in the testimony presented to this Court is testimony going to the potentiality for grounds for a restraining order and therefore the existence of spousal abuse. Determining whether her testimony is sufficient to demonstrate those limitations is by its very nature a material genuine issue of fact that disallows summary adjudication. Yoppolo v. Walter (In re Walter), 265 B.R. 753 (2001 OH)

Amendment of Schedules Is Not Suspect:

Bankruptcy debtors are afforded a virtually unfettered right to amend their schedules as a matter of course under Fed. R. Bankr. P. 1009(a) at any time before their case is closed.

CONCLUSION:

For all of the foregoing reasons respectfully request that the Court deny the Motion for Summary Judgment as to Monette Rosemarie Stephens and that it further issue sanctions as against Movant and her counsel, jointly and severally, pursuant to FRCP Rule 56(h) for both a frivolous motion and for filing papers and pleadings without regard to the economies for the Court and Ms. Stephens.

Dated: April 12, 2013         /s/ Sheila Gropper Nelson
                              Attorney for Monette Stephens only

Opposition Points & Authorities/MSJ/BK 12-30143/APN 12-03148                    10

Case: 12-03148    Doc# 31    Filed: 04/12/13    Entered: 04/12/13 19:11:09    Page 10 of 10