CONFIDENTIAL

## Agreement to Split Rainforest Capital Note in to Two Notes

The undersigned, being the managing member of Rainforest Capital, LLC ("Rainforest"), and the General Partner of the Pook Snook Dook Limited Partnership ("PSD"), agree to split the Rainforest Note from Rainforest to PSD in the amount of $564,877 (Appendix A, hereforth "The Note") into two notes, effective September 1st, 2010, with the same terms and conditions (Appendix B and Appendix C):

NOW, THEREFORE, BE IT RESOLVED, that The Note described above will be eliminated and replaced with two notes, the first note being from Rainforest to PSD in the amount of $209,017, with an interest rate of 10% and plus amortized points, and the second note being from Rainforest to PSD in the amount of $355,860, with 10% interest and amortized points;

IN WITNESS WHEREOF, the undersigned have executed this Agreement to Split Rainforest Capital Note in to Two Notes, as of the Effective Date.

By: _____
Colin Wiel, Managing Member, Rainforest

By: _____
Monette Stephens, General Partner of PSD

KE EXHIBIT 6 Stephens 3.5.13 (1 pg)

CONFIDENTIAL

## Agreement to Pay off Rainforest Capital Note Early

The undersigned, being the General Partner of the Pook Snook Dook Limited Partnership ("PSD"), agrees to take a slightly discounted payment for the Rainforest Capital ("RC") Note of $355,860 due on May 1st, 2011, and interest that would be due of $3937.36 for the month of April, if paid on May 1st.

Should RC pay via wire by Wednesday, April 13th, 2011, PSD will accept the discounted payoff of $356,247.70 rather than the full value of the Note... as full payment for the entire principal and interest owed.

PSD shall return the original Note (marked as paid) within 24 hours of receipt of said payment.

IN WITNESS WHEREOF, the undersigned has executed this Agreement to accepted a discounted payoff for the final RC Note.

By: _____
Monette Stephens, General Partner of PSD

2

1825979.2

Sup. Exhibit S - Pook Snook Dook, LP - Agreement to received discounted payoff S-1 of 1 on Rainforest Capital Note (2011)

KE EXHIBIT 7 Stephens 5.15.13

WEIL 0092

Case: 12-03148    Doc# 81-17    Filed: 08/30/13    Entered: 08/30/13 15:33:51    Page 2 of 14

```
Daniel K. Slaughter (SBN 136725)
STEIN & LUBIN LLP
Transamerica Pyramid
600 Montgomery Street
14th Floor
San Francisco, California 94111
Telephone:   (415) 981-0550
Facsimile:   (415) 981-4343
dslaughter@steinlubin.com

Attorneys for Plaintiffs
THE RELIANT GROUP, INC., FIDELITY CAP
IV, LLC, FIDELITY CAP V, LLC
```

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

UNLIMITED JURISDICTION

| | |
|---|---|
| THE RELIANT GROUP, INC.; FIDELITY CAP IV, LLC; FIDELITY CAP V, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>CARL WESCOTT; MONETTE STEPHENS; POOK SNOOK DOOK, LP,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR BREACH OF CONTRACT, FRAUD AND DEFAMATION** |

Plaintiffs Reliant Group, Inc. ("Reliant"), Fidelity CAP IV, LLC ("CAP IV"), and Fidelity CAP V, LLC ("CAP V"), for their complaint against defendants Carl Wescott, Monette Stephens and Pook Snook Dook, LP ("PSD"), allege as follows:

1. Defendants are current or former members of CAP IV, CAP V, and CAP VI, limited liability companies ("LLCs") managed by Reliant. Under false pretenses, Wescott and Stephens transferred their interests in CAP IV and CAP V to PSD, a limited partnership Wescott and Stephens control but which has their minor children as beneficiaries, apparently to avoid creditors. This transfer should be undone since consent was obtained under false pretenses; Defendants' Subscription Agreements contained false statements, and the assignee does not

comply with the terms of the Assignment Agreements and Operating Agreements for the LLCs.

2. Defendants have also defamed Reliant. Wescott and Stephens were sued by one of their creditors, in an action entitled *Fiechter v. Wescott*, before the date of the transfer of their interests in CAP IV and CAP V. The plaintiff in that suit, Fiechter, sought an order of attachment covering, among other things, Defendants' interests in the CAP IV and CAP V funds. Reliant held back the distributions when both Fiechter and Wescott threatened to sue Reliant to obtain the distribution proceeds. Reliant held the distributions for less than 21 days until motions by Fiechter seeking a writ of attachment could be adjudicated. During that 21 days, Defendants embarked on a slanderous, defamatory campaign against Reliant in an attempt to intimidate Reliant to make the distributions in advance of the ruling on the writ of attachment. Specifically, Defendants wrote and published a review of Reliant on the website RipoffReport.com which falsely stated that Reliant had refused to answer questions about why certain distributions were being withheld and failed to answer other "basic questions." Defendants also published on the website that Reliant "is a Ponzi scheme and/or that they are bankrupt." Defendants have refused to admit the defamation or assist Reliant in removing the false statements in Defendants' Report, which remains available to the public on the Internet. As a result, Reliant's business, including its ability to attract new investors, has been harmed.

## THE PARTIES

3. Plaintiff The Reliant Group, Inc. is a California corporation, with its principal place of business in San Francisco, California. Plaintiffs Fidelity CAP IV, LLC and Fidelity CAP V, LLC are California limited liability companies managed by Reliant and its subsidiaries. Reliant was founded in 1993 and has acquired $1.8 billion of assets on behalf of its investors over the last 19 years. Reliant currently manages six discretionary investment funds of approximately $500 million of assets on behalf of approximately 300 investors.

4. Defendant Carl Wescott is an individual, residing in San Francisco,

Case: 12-03146 Doc# 81-17 Filed: 08/30/13 Entered: 08/30/13 15:03:51 Page 4 of 14

Sup. Exhibit T - Reliant Complaint against Wescott, Stephens and PSD, LP - 2 of 12

Reliant 0002

California. Defendant Monette Stephens is an individual, residing in San Francisco, California. Defendant Wescott is married to Defendant Stephens.

5. Defendant Pook Snook Dook, LP, is an Arizona limited partnership, with its principal place of business at the home address of Wescott and Stephens in San Francisco, California. Upon information and belief, PSD's general partners are Wescott and Stephens and the limited partner of PSD is a trust whose sole beneficiaries are Wescott's and Stephens' minor children. PSD was organized in the State of Arizona on or about June 10, 2010. The filing was prepared by the law firm of Lodmell & Lodmell, PC, which advertises itself on its website as "#1 Asset Protection Attorneys" (www.Lodmell.com).

## VENUE AND JURISDICTION

6. Jurisdiction is proper in this Court in that the total amount of damages sought in this action is within the jurisdiction of the Superior Court.

7. Venue is proper in San Francisco County because Defendants reside and have their principal place of business in this county.

## GENERAL ALLEGATIONS

8. Prior to 2008, Defendants Wescott and Stephens were members of three Reliant LLCs, known as CAP IV, CAP V and CAP VI. CAP IV was funded by investor capital contributions during the years 2005 through 2006. CAP V was funded by investor contributions during 2006 through 2008. Wescott timely made all capital contributions as required under the Operating Agreements for CAP IV and CAP V.

9. In 2010, Wescott and Stephens defaulted on their obligations under Section 2.2.1 of the Operating Agreement for CAP VI to make a capital contribution in the amount of $33,249 (Capital Call #6). Wescott and Stephen subsequently cured that default, and Reliant did not exercise the default remedies available to it under the Operating Agreement for CAP VI. Wescott and Stephens defaulted on the next capital call for CAP VI (Capital Call #7) in the amount of $37,932. Reliant deferred its fees to cover Wescott's and Stephens' obligations for Capital Call #7 for several months, although Reliant was not required to do so. Wescott advised

Case: 12-03148   Doc# 81-17   Filed: 08/30/13   Entered: 08/30/13 15:03:51   Page 5 of 14

Sub. Exhibit T 1 Reliant Complaint against Wescott, Stephens and PSD, LP   7-3 of 12

Reliant 0003

1 | Reliant and its placement agent, Kipling Capital, repeatedly and in writing during this time that
2 | the capital contribution would be forthcoming. However, Wescott and Stephens never made the
3 | required contribution and never remedied the default. Reliant informed Wescott on February 9,
4 | 2011 that Reliant would "bridge the capital call" for Wescott and Stephens until Reliant could
5 | find a replacement investor. Section 2.4.3 of the Operating Agreement for CAP VI provides that,
6 | in the event of a default, "the Non Contributing Member's Percentage Interest and Capital
7 | Account shall be reduced" according to a formula and also that the Managing Member of CAP VI
8 | may purchase a defaulting Non Contributing Member's interest for 75% of its value. Thus,
9 | Reliant could have elected to reduce Wescott's and Stephens' interest and/or purchase Wescott's
10 | and Stephens' interest for a 25% discount. Instead, Reliant offered to help Wescott and Stephens
11 | find a purchaser for their interest in CAP VI. Reliant had no obligation to assist Wescott and
12 | Stephens in arranging this sale, but Reliant did so in February 2011, at a price that returned 100%
13 | of Wescott's and Stephens' capital investment in CAP VI. Reliant took no fee or any other
14 | compensation for arranging this sale and the subsequent transfer.

15       10. Section 7.2 of the Operating Agreements for CAP IV and CAP V, which
16 | Reliant entered into with Defendants Wescott and Stephens when they made their initial
17 | investments and which PSD agreed to at the time of the purported transfer to it, allows transfer of
18 | membership interests only if, *inter alia*, (i) the Managing Member consents (unless the transfer is
19 | for estate planning purposes, in which case no such consent is necessary) and (ii) the transfer can
20 | be accomplished without registration under the Securities Act of 1933 (that is, in compliance with
21 | Regulation D, 17 C.F.R. § 230.501 *et seq.*). True and correct copies of the Subscription and
22 | Operating Agreements for CAP IV and CAP V are attached hereto as Exhibits A through D.

23       11. In May 2010, Wescott assigned his interest in CAP V to Stephens. A true
24 | and correct copy of the Assignment Agreement and related papers are attached hereto as
25 | Exhibit E.

26       12. In October 2010, Wescott and Stephens requested permission from Reliant
27 | to transfer their interests in CAP IV and CAP V to a limited partnership, PSD, stating that they
28 | were doing so for estate planning purposes. Reliant granted permission for the transfers, subject

61270004/452413      4      Case No. _____

COMPLAINT FOR BREACH OF CONTRACT, FRAUD AND DEFAMATION

Case: 12-03145 Doc# 81-1 Filed: 08/30/13 Entered: 08/30/13 15:03:51 Page 6 of 14
Sup. Exhibit T Reliant Complaint against Wescott, Stephens and PSD, LP 7 of 12
Reliant 0004

to the terms of Assignment of Membership Interest, Assumption of Obligations, Agreement to Be Bound by Operating Agreement and Admission of Substituted Member ("Assignment Agreements"). PSD also signed copies of the Subscription Agreement and Operating Agreement for both LLCs. True and correct copies of the Assignment Agreements, and PSD's signed copies of the Subscription Agreement and Operating Agreement and related papers for CAP IV and CAP V are attached as Exhibit F and G.

13. The Assignment Agreement requires that the new assignee be bound by the terms of the CAP IV and CAP V Operating Agreements and Subscription Agreements. Section 3 of the Subscription Agreement further provides that "Member acknowledges that it understands the meaning and legal consequences of the representations, warranties and covenants contained in Paragraphs (a) through (n) above and hereby agrees to indemnify and hold harmless the Company, the Managing member and the other members, and their respective officers, directors, members and affiliates from and against any and all cost, loss, damage or liability (including without limitation, reasonable attorney's fees and disbursements) due to or arising out of any breach or inaccuracy of any of its representations, warranties and acknowledgments contained in this Subscription Agreement."

14. On October 15, 2010 Wescott and Stephens transferred their ownership interests in CAP IV and CAP V to PSD. Upon information and belief, a trust whose sole beneficiaries are Wescott's and Stephen's minor children is the limited partner of PSD, and Wescott and Stephens are the general partners.

15. Reliant now believes that the transfer of Wescott's and Stephens' interests in CAP IV and CAP V was not for estate planning purposes, but to avoid Wescott's and Stephens' creditors. In the Subscription Agreement, Defendants represented to Reliant that PSD "is an entity in which all of the equity owners are 'accredited investors' as defined in Rule 501 under the Securities Act." On information and belief, PSD is not an "accredited investor" because it fails to meet at least two Regulation D requirements: (1) that it have assets exceeding $5 million, and (2) that it not be formed to acquire the securities offered. Thus, the transfer was a breach of the CAP IV and CAP V Operating Agreements and the Assignment Agreement, and

1  Plaintiffs' approval of the transfer was obtained fraudulently. Reliant seeks to void the approval
2  of the transfer.

3  16.  The transfer of Wescott's and Stephens' interests in CAP IV and CAP V
4  was, on information and belief, for the purpose of avoiding Wescott's and Stephens' creditors.
5  One of those creditors sued Wescott and Stephens in San Francisco Superior Court in *Fiechter v.*
6  *Wescott,* Case No. CGC 10-496091, and alleged that the transfer of the CAP IV and CAP V
7  interests to PSD was fraudulent. Fiechter obtained attachment orders covering essentially all of
8  Wescott's real and personal property (including his interests in CAP IV and CAP V) on April 29
9  and May 11, 2010 in the amount of $1,608,396. Fiechter served Reliant with notice of the
10 attachment on April 14, 2011, which notice included a March 20, 2011 writ of attachment
11 covering essentially all of Wescott's property. Fiechter also obtained on May 18, 2011 a
12 temporary restraining order which specifically prohibited Wescott from disposing of any interest
13 in CAP IV and CAP V (among other interests). Fiechter threatened to sue Reliant if it made any
14 distributions from CAP IV or CAP V to PSD, arguing that Reliant had constructive knowledge of
15 Wescott's and Stephens' fraudulent transfer. Fiechter argued that the transfer was ineffective and
16 therefore the attachment orders effectively prevented payment of what Fiechter argued were
17 Wescott's distributions to PSD. Reliant informed both Fiechter and Defendants that it would not
18 make any distributions until the Court in the *Fiechter* matter ruled on Fiechter's request to attach
19 the distributions from CAP IV and CAP V.

20 17.  Defendants then began their campaign of false information in an attempt to
21 intimidate Reliant to make the distributions before the court could rule on Fiechter's then-pending
22 motion specifically directed at attachment of the CAP IV and CAP V interests. Defendants
23 threatened to spread misinformation to Reliant's investors, defame Reliant more broadly in email
24 blasts, and report Reliant to government agencies. Further, on May 31, 2011 Defendants posted a
25 defamatory Report on the website RipoffReport.com. A true and correct copy of the Report
26 (along with Reliant's rebuttal dated November 21, 2011) is attached as Exhibit H. The Report is
27 replete with false statements including the following.

28 18.  The Report states that Defendants had contacted Reliant "many times to no

61270004/452413                           6                              Case No._____

COMPLAINT FOR BREACH OF CONTRACT, FRAUD AND DEFAMATION

Case: 12-03145    Doc# 81-17    Filed: 08/30/13    Entered: 08/30/13 15:03:51    Page 6 of 12
Sup. Exhibit T8 Reliant Complaint against Wescott, Stephens and PSD, LP    7 of 14
Reliant 0006

avail . . . but no answer to my questions as to why we didn't receive" distributions, "and noone [sic] will speak about what has happened." In fact, at the time the Report was published Reliant had already explained to Defendants that it was withholding the distributions pending resolution of Fiechter's attachment request.

19. The Report states that "I've asked other questions numerous times and no one will speak to investors. Noone [sic] will answer my basic questions." In fact, Reliant had answered Defendants' questions, although Reliant declined to provide Defendants with information on prospective valuations of the CAP Fund interests held (which were not provided to any investor). Reliant reports to each and every investor in all of its six CAP funds on a quarterly basis. Defendants have timely been presented with each and every quarterly report from the inception of their investment through the date of this complaint. No information was ever withheld from Defendants. In addition, Plaintiff and its placement agent, Kipling Capital, corresponded with Wescott numerous times before, during and after the notice of attachment was served by Fiechter, including emails to Defendant on March 16, 2011; March 24, 2011; April 18, 2011 (copy of email attached as Exhibit I), April 25, 2011; May 24, 2011 and June 8, 2011. There is simply no basis at all for Defendants' charges in the Report which implied, given the surrounding context, that all of the CAP IV and CAP V investors had not received distributions or any explanation, when in fact only Defendants' (and no other investor's) distributions had been held back and Defendants knew full well that the withholding was a result of the pending *Fiechter* litigation.

20. The Report states that Reliant's funds are "a Ponzi scheme and/or that they are bankrupt . . . where are <u>investor funds</u>?." (Emphasis in original.) In fact, Reliant is not engaged in a Ponzi scheme and is not bankrupt and Defendants knew or, in the exercise of reasonable care, should have known, that their statement was false. Further, in context the reference to "investor funds" implies that all the monies invested in these funds were at risk, when in fact Defendants knew or, in the exercise of reasonable care, should have known, that

only their distributions were being withheld pending the outcome of Fiechter's effort to attach the

61270004/452413                                  7                                  Case No.

COMPLAINT FOR BREACH OF CONTRACT, FRAUD AND DEFAMATION

1 | CAP IV and CAP V distributions.

2 | 21. The Court in *Fiechter* held a hearing on Fiechter's attachment request on May 26, 2011. Fiechter then filed a separate ex parte motion on June 3, 2011 seeking another TRO regarding the CAP IV and CAP V funds. On June 28, 2011, the Court issued an order granting the attachment request with respect to Defendants Wescott and Stephens but did not issue an order attaching PSD's interests in the CAP IV and CAP V funds. Reliant released the distributions to PSD even before that June 28 Order, relying on the Court's statements at the May 26 hearing on the attachment request and the June 3 ex parte motion.

22. Defendants' posting on RipoffReport.com remains available to the public on the Internet. Reliant requested that RipoffReport.com delete the Report but the website has declined to do so. Reliant requested that Defendants remove the Report, post a retraction, or sign an affidavit admitting that the Report is false and detailing its inaccurate statements but they have declined to do so.

23. Reliant has been harmed by the Report. Reliant has received communications from potential investors stating that they were reluctant to and decided not to invest in Reliant's funds because of the RipoffReport.com Report. Reliant believes that other potential investors will not participate in Reliant's CAP series funds because of the false charges contained in the RipoffReport.com Report.

### FIRST CAUSE OF ACTION
(Breach of Contract)

24. Plaintiffs incorporate herein, as if set forth in full, the allegations of Paragraphs 1 through 23, above.

25. By Wescott's and Stephens' actions in transferring their interests in CAP IV and CAP V to PSD, for other than estate planning purposes and to an entity that does not meet the requirements of Regulation D, the CAP IV and CAP V Subscription and Operating Agreements, and the Assignment Agreement, Defendants breached those agreements and the terms and conditions therein applicable, and injured Plaintiffs as a result thereof.

26. Plaintiffs have performed all of their obligations under the agreements.

61270004/452413
8
Case No. ____

COMPLAINT FOR BREACH OF CONTRACT, FRAUD AND DEFAMATION

Sup. Exhibit T-1 Reliant Complaint against Wescott, Stephens and PSD, 1 P. 8 of 10
Reliant 0008

27. An adequate remedy at law does not exist to remedy the improper transfer effected by Defendants because CAP IV and CAP V membership interests must remain in the hands of entities that meet Regulation D requirements in order for Reliant to maintain the exemption from registration with the Securities Exchange Commission. Moreover, pursuant to section 9.12 of the Operating Agreements for CAP IV and CAP V, Defendants waived their right to the defense that an adequate remedy at law exists.

28. Under the equitable powers of the Court, California law and Section 9.12 of the Operating Agreements, an injunction to prohibit and declare null and void the prior transfer is authorized.

29. Pursuant to Section 9.11 of the Operating Agreements, and Section 3 of the Assignment Agreement, Plaintiffs are entitled to an award of attorneys' fees in this action.

## SECOND CAUSE OF ACTION

(Fraud)

30. Plaintiffs incorporate herein, as if set forth in full, the allegations of Paragraphs 1 through 29, above.

31. As alleged above, in October 2010 Wescott and Stephens represented to Plaintiffs that they wished to transfer their membership interest in CAP IV and CAP V to PSD. They stated that they were doing so for estate planning purposes. They also signed the Assignment Agreement, representing that the transferee met all requirements of Regulation D. Defendants also made the false statements set forth above in their May 31, 2011 RipoffReport.com Report.

32. These representations are false. Plaintiffs now believe that the transfer was not for estate planning purposes but to avoid creditors. In addition, on information and belief, PSD is not an "accredited investor" under Regulation D because it does not have assets exceeding $5 million, and was formed for the purpose of acquiring the CAP IV and CAP V membership interests. Finally, Defendants were provided all the information they requested and they knew that Plaintiffs are not a "Ponzi scheme" or "bankrupt."

33. When Defendants made the representations alleged above, they knew they

61270004/452413     9     Case No.

COMPLAINT FOR BREACH OF CONTRACT, FRAUD AND DEFAMATION

Case: 12-03148 Sp. Exhibit T - Reliant Complaint against Wescott, Stephens and PSD, Doc# 61-17 Filed: 08/30/13 Entered: 08/30/13 15:35:51 Page 9 of 12 of 14

Reliant 0009

were false and made them with the intention to deceive Plaintiffs into approving the transfer of Wescott's and Stephens' interests in CAP IV and CAP V and to intimidate Plaintiffs into making distributions to PSD notwithstanding the pending litigation on the attachment of those distributions.

34. At the time of Defendants representations made to effect the transfer of Wescott's and Stephens' interests in CAP IV and CAP V to PSD, Plaintiffs were ignorant of the falsity of Defendants' representations and believed them to be true. Plaintiffs' reliance on Defendants' representations was justified because Wescott and Stephens had been long-time investors in Reliant's funds and had never previously made misrepresentations.

35. As a proximate result of Defendants' fraudulent conduct, Plaintiffs CAP IV's and CAP V's exemption from SEC registration requirements has been put at risk and Plaintiffs have been forced to file this lawsuit to maintain that exemption, expending attorneys' fees and costs of the suit. In addition, Plaintiffs have lost investor that were otherwise interested in Reliant's funds and have been forced to expend monies in an effort to reverse the false impression made by Defendants' Report.

36. Defendants' conduct was knowing, malicious, fraudulent, despicable, and in conscious disregard of Plaintiffs' rights. Such conduct should not be tolerated, and the Court should punish and make an example of Defendants by awarding punitive damages in an amount sufficient to make an example of Defendants' improper conduct and to deter others from engaging in such willful, wanton and reckless conduct.

### THIRD CAUSE OF ACTION
#### (Defamation)

37. Plaintiffs incorporate herein, as if set forth in full, the allegations of Paragraphs 1 through 36, above.

38. Defendants published on RipoffReport.com a Report that is available to the public.

39. The Report is false. Defendants knew or, in the exercise of reasonable

61270004/452413                                     10                                     Case No. _____

COMPLAINT FOR BREACH OF CONTRACT, FRAUD AND DEFAMATION

Reliant 0010

1 | care, should have known, at that time they published the Report that Reliant was holding their
2 | distributions because of pending litigation, specifically Fiechter's application for an attachment of
3 | the CAP IV and CAP V distributions. Defendants also knew or, in the exercise of reasonable
4 | care, should have known, that all of their questions about Reliant's funds had been answered, that
5 | Reliant was not a Ponzi scheme or bankrupt, and that no other investors' monies were
6 | unaccounted for.

7 |     40.    The Report is defamatory, false and misleading. Ponzi schemes are illegal.
8 | Falsely stating that Reliant is engaged in a Ponzi scheme and/or is bankrupt has the foreseeable
9 | result of injuring Reliant's business. Potential investors reading the Report would believe that
10 | Reliant is a Madoff-style investment pyramid scheme, where investors could expect to lose
11 | significant money. The same is true of the other false statements, since unanswered questions or
12 | unjustified withholding of distributions casts a negative light on Reliant. Existing investors
13 | reading the Report may believe that their investments are at risk, and thus decline to make future
14 | investments with Reliant.

15 |     41.    The Report is not subject to any privilege.

16 |     42.    Defendants' defamatory statements have injured Reliant and continue to do
17 | so. Reliant is currently in the marketplace raising funds for its seventh discretionary fund, CAP
18 | VII. A potential investor, who proposed a $10 million investment in the CAP VII fund, has
19 | brought the RipoffReport.com Report to the attention of Reliant. While performing due diligence
20 | for the investment, the investor discovered the Report posted by Defendants. The potential
21 | investor has not proceeded at this time with the investment. As a direct and proximate result of
22 | Defendants' defamatory Report, Reliant has suffered damage to its reputation in an amount to be
23 | proven at trial. In particular, Reliant has been damaged because Defendants' defamatory Report
24 | discouraged persons from investing with Reliant and encouraged others to divest their holdings in
25 | Reliant's funds. Defendants' conduct in publishing their defamatory Report, which they knew
26 | was false and knew would harm Reliant's reputation, was willful, malicious and done with ill will
27 | towards Reliant and with conscious disregard for Plaintiffs' rights.
28 |

61270004/452413    11    Case No. _____

COMPLAINT FOR BREACH OF CONTRACT, FRAUD AND DEFAMATION

Case: 12-03148  Doc# 61-17  Filed: 06/20/13  Entered: 06/20/13 15:35:51  Page 13 of 14

Supp. Exhibit T-1 Reliant Complaint against Wescott, Stephens and PSD, LLP

Reliant 0011

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1. For general and special damages in an amount according to proof at trial;

2. For an injunction requiring: (a) that Defendants transfer the interest of PSD in CAP IV and CAP V to Wescott and Stephens or, in the alternative, declaring the prior transfer to PSD null and void under the terms of the Subscription and Operating Agreements governing those funds; and (b) that Defendants cooperate with Plaintiffs in their efforts to remove the RipoffReport.com Report from the website, and a declaration that the Report is false, defamatory and should be removed from the website;

3. For punitive damages in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct;

4. For post-judgment interest calculated at the legal rate;

5. For attorneys' fees and costs of suit incurred herein;

6. For such other relief as the Court may deem just and proper.

Dated: January 27, 2012                       STEIN & LUBIN LLP

By: _____
Daniel K. Slaughter
Attorneys for Plaintiff
THE RELIANT GROUP, INC., FIDELITY CAP IV, LLC, FIDELITY CAP V, LLC

61270004/452413                   12                  Case No._____

COMPLAINT FOR BREACH OF CONTRACT, FRAUD AND DEFAMATION