Carl Wescott
PO Box 190875,
San Francisco, CA 94119
*In propria persona*
+1 415 335 5000



FILED
OCT 27 2017
UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISON

| | |
|---|---|
| In re: Carl Alexander Wescott, ) | Chapter 7 Bankruptcy No. 12-30143 |
| Monette Rosemary Stephens, Debtors ) | Adversary Proceeding 12-03148 DM |
| _____ ) | |
| Janina M. Hoskins, Trustee ) | MOTION TO UNSEAL RECORDS |
| v. ) | |
| Wescott, *et. al.* ) | HEARING DATE: ~~Nov.~~ DEC. 15, 2017 10 AM |
| | 450 GOLDEN GATE 16th FLOOR Room 17 |

### MOTION TO UNSEAL TESTIMONY

Debtor and Defendant Carl Alexander Wescott ("Movant") requests that this Court issue an Order directing the Clerk of the Court to make public all exhibits and testimony filed and provided in connection with the instant case adversary proceeding trial held on October 2nd and 3rd, 2013 and November 4th, 2013, objecting to the discharge of Debtor Monette Rosemary Stephens ("Ms. Stephens") and, in support of his Motion, the Movant states as follows:

1. There is a strong presumption of public access to judicial proceedings. *EEOC v. National Children's Center*, 98 F.3rd 1409 (DC Cir. 1996).

    The Courts are public institutions that best serve the public when they conduct their business openly and in full view. 98 F.3rd at 1411.

Thus, at a minimum, the decision to seal records should be made as a result of thorough submissions offered to the Court balancing the public's right to have access to the documents and evidence that formed the basis for a key ruling by the Court against whatever private interest is served by denying public access.

2. In this case, the Motion to seal testimony was apparently made orally on the record and with no briefing or significant discussion (Movant states this upon Information and Belief, not finding a Motion to Seal Testimony on the docket).

3. As the Court's Opinion docketed September 30, 2014 reflected, the Movant did not participate in the trial, because he was not provided with notice of the trial. Neither side informed Movant of the trial nor requested his attendance nor requested his participation as a witness. As a practical matter, the Movant could not cross-examine witnesses or otherwise test the sufficiency of the evidence presented.

4. Yet, the Court's acceptance of Ms. Stephens's defense of "duress" necessarily painted the Movant as an abusive and manipulative husband who essentially intimidated and mesmerized Ms. Stephens into entering into myriad financial transactions that Ms. Stephens admitted she understood. See, for example, Opinion of Court at page 9 in which Ms. Stephens acknowledged transferring money from her personal account to an LLC account precisely because her personal accounts had been attached. This snippet of testimony does not appear to be an account by a sufferer from Stockholm Syndrome. Creditors were attaching Ms. Stephens's personal accounts and Ms. Stephens knowingly transferred money beyond their reach.

5. The Court's Opinion notes the Trustee's strenuous Objection to Ms. Stephens's discharge and actually commends the Trustee for her vigilance and professionalism in presenting that Objection. See Opinion at page 24. The Court thus implicitly acknowledged that reasonable minds could differ on whether Ms. Stephens's duress defense was sufficient in law or, indeed, supported by the facts. Yet, Ms. Stephens has utilized the Court's conclusions to deprive the Movant of parenting rights that were not an issue before this Court.

6. Ms. Stephens's family law attorney, Mr. Terry Szucsko introduced the Court's Opinion into evidence before the Honorable Judge Colfax in the Movant's divorce proceedings (Case number FDI-14-781666, San Francisco Superior Court). Immediately prior to that, Colfax had ruled that Movant would have visitation with his three minor children. Immediately thereafter, upon Szucsko's reading of many of the conclusions of the Court, Judge Colfax reversed herself on the issue of the Movant's visitation with the parties' children. Judge Colfax then summarily denied all visitation rights to the Movant.

7. Thus, this Court's Opinion was and is the fundamental reason that Movant did not have time with his children, and that his children were deprived of time with their father.

8. The Movant has a due process right to confront and cross-examine witnesses. Although the 6th Amendment confrontation clause applies only to criminal proceedings, there is a 5th and 14th amendment substantive due process right to confront and cross-examine witnesses where a fundamental right is implicated. *Greene v. McElroy*, 360 US 474, 492 (1959). The right to participate in parenting and to make parenting choices is one of those fundamental rights under the 14th amendment. *Troxel v. Granville*, 530 US 57 (2000). The Movant is thus being deprived of a fundamental constitutional right without due process.

9. Ms. Stephens and her counsel, Mr. Szucsko are cynically and callously misusing the Court's Opinion that was never intended to constrain or diminish the Movant's parental rights, to do exactly that. The Court's Opinion is diligent and contains many citations to the record, creating a patina of reliability. But, as the Court will realize, the citations are to a record that the Movant was not permitted to shape. The deck was stacked against him. The Trustee was not representing his interests; the witnesses were hand-picked by Ms. Stephens and Ms. Stephens's counsel; and Ms. Stephens's testimony was utterly self-serving.

10. The Court's Opinion paints the Movant as an individual with a propensity to violence and an uncontrollable temper. See Opinion at pp: 16-18. Moreover, the Court makes references to "the undisputed testimony" that Ms. Stephens was, for all practical purposes, a "single parent" of three boys. See Opinion at p. 20. <u>The Movant vigorously disputes that conclusion and has the right to dispute the supportive testimony</u>. While the Court obviously did not intend to mislead, it is unavoidably misleading to characterize testimony as "undisputed" when the party best able and most strongly motivated to dispute the testimony is not permitted to do so.

11. The Court's Opinion acknowledges that Ms. Stephens did not utilize expert testimony. (Opinion at p. 20.) Ms. Stephens adduced the testimony of two non-experts, Mark Cromack and Kristine Schwartz who were and are both exceptionally close friends of Ms. Stephens for 30+ years in Santa Barbara. However, at the time of their testimony, neither had even ever been to Movant's San Francisco house! (at least while Movant was there).

12. One inference from this paucity of testimony is that Ms. Stephens could not engage a qualified expert based on the thinness of her case and the fact that anyone who actually knew Movant would not support her story.

13. The lack of expert testimony, the attenuated nature of Movant's connection to the non-expert witnesses, the strenuous objection of the Trustee, the belated raising of the duress defense by Ms. Stephens and Ms. Stephens's own concessions concerning her knowledge of the reason for the transactions the Trustee had complained of all suggest that the characterization of the Movant as abusive by Ms. Stephens's legal team is open to an array of challenges. <u>The effect of sealing the evidence and issuing the conclusions and characterizations of the Movant is to achieve a kind of *de facto* collateral estoppel</u>.

14. The Movant cannot dispute hidden testimony. In the meantime, the Movant's parenting rights – protected under the 14th amendment – have been terminated based on the same hidden, secret testimony.

15. Relatedly, the Movant's allegedly uncontrollable temper and propensity to violence has (most improbably) not generated legal consequences for the Movant in any other life context. The Court's Opinion, with multiple citations to the sealed testimony, describes the Movant as someone who is out of control, who smashes equipment with weights that "look like baseball bats". Opinion pp 17-18. It would be difficult for Judge Colfax or any future family law judge to read the Opinion without questioning the parental fitness of the Movant even though any testimony supportive of the specific allegations may be demonstrably fanciful or exaggerated.

16. In conclusion, no public interest is served by keeping this testimony sealed. No compelling private interest is served by sealing the testimony. The presumption is in favor of open proceedings subject to independent critical evaluation by the public and by other Judges taking judicial notice of the proceedings. The Movant is being deprived of his parental rights, in material part, by testimony that was not tested by the Movant's cross examination and was not rebutted by witnesses the Movant could have called.

The Movant is fending off an invisible assailant. While it is not now possible to retroactively insert the Movant into the 2013 Proceedings, he would be able to respond to specific testimony with his own evidence. Without access to that testimony, the Court's conclusions, which were uninformed by the Movant's input and thus were never intended to abridge the Movant's rights, carry overwhelming weight with any state trial judge. The Movant is suffering prejudice that amounts to a deprivation of due process under the 5th and 14th amendments.

WHEFORE Movant Carl Wescott requests that this Court issue an Order:

(a) Directing the Clerk of the Court to make public all exhibits and testimony filed and provided in connection with the Trial on the Trustee's Objection to the Discharge of Debtor Monette Rosemary Stephens and;

(b) Providing the Movant with such other, further relief as the Court deems Just.

Respectfully Submitted,

_____
Carl Alexander Wescott Pro Se